******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EQUITY ONE, INC. *v.* THOMAS J. SHIVERS
(AC 30600)

Beach, Robinson and Mihalakos, Js.*

*Submitted on briefs November 12, 2013—officially released June 10, 2014*

(Appeal from Superior Court, judicial district of

Tolland, Sferrazza, J.)

*J. Hanson Guest* and *Jeremy Baver* filed a brief for the appellant (defendant).

*Robert J. Wichowski* and *David F. Borrino* filed a brief for the appellant (plaintiff).

*Opinion*

BEACH, J. This case comes to us on remand from our Supreme Court. We previously remanded the case to the trial court for an evidentiary hearing to determine whether the plaintiff, Equity One, Inc., had standing. *Equity One, Inc.* v. *Shivers*, 125 Conn. App. 201, 9 A.3d 379 (2010). Our Supreme Court reversed our decision and determined that the trial court properly found that the plaintiff had standing to bring the action. *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 74 A.3d 1225 (2013). Our Supreme Court remanded the case to us with direction to address the defendant's remaining claim, that action had been taken in the trial court in violation of the automatic bankruptcy stay. Id., 125 n.2. The defendant, Thomas J. Shivers, claims on appeal that the trial court improperly rendered judgment in violation of the stay.[1] We reverse in part the judgment of the trial court and remand the case for further proceedings.

The following facts and procedural history, as set forth in *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 119, are relevant: "On November 28, 2006, the defendant executed a promissory note in favor of ResMAE Mortgage Corporation in the principal amount of $201,600. That note was secured by a mortgage deed on property located at 27 Mountain Street in the town of Vernon, which the defendant also executed on November 28, 2006, and delivered to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for ResMAE Mortgage Corporation.[2] On June 27, 2007, the plaintiff commenced this action, seeking to foreclose on the mortgage. The plaintiff alleged that, because the defendant had failed to make payments as required by the note, the plaintiff, as the holder of the note and mortgage, had elected to declare the entire balance of the note due and payable and to foreclose on the mortgage.

"On July 19, 2007, the plaintiff filed a motion for default for the defendant's failure to file a responsive pleading and a motion for a judgment of strict foreclosure. On July 23, 2007, the court granted the plaintiff's motion for default. On September 24, 2007, the court rendered judgment of foreclosure by sale, with a sale date of January 5, 2008. The sale date was extended twice: the first time it was extended to May 3, 2008, at the request of the plaintiff; the second time it was extended to May 10, 2008, at the request of the committee appointed to conduct the sale. The May 10, 2008 foreclosure sale did not go forward because the defendant filed a bankruptcy petition on May 8, 2008.

"[Thereafter, on October 9, 2008, the automatic stay that had been imposed following the defendant's bankruptcy filing was lifted.] After the bankruptcy stay was lifted, the plaintiff filed a motion to reopen and to reenter the judgment on November 7, 2008. On November 21, 2008, the defendant filed an objection to the foreclosure,

asserting that he was no longer in default and . . . that the plaintiff did not have standing to foreclose the mortgage. . . . On November 24, 2008, the court . . . heard argument from the parties [on] the motion to reopen and to reenter the judgment. At the conclusion of that hearing, the court . . . rendered judgment of strict foreclosure with the law days commencing on January 12, 2009." (Internal quotation marks omitted.) Id., 122–23.

On appeal to this court, the defendant claimed, inter alia, that the trial court erred in failing to conduct an evidentiary hearing to ascertain whether the court had subject matter jurisdiction after the defendant raised the issue of the plaintiff's standing. This court reversed the judgment of the trial court and remanded the case for an evidentiary hearing on the issue of standing. *Equity One, Inc.* v. *Shivers*, supra, 125 Conn. App. 201. Our Supreme Court reversed that decision and determined that the trial court had properly found that the plaintiff had standing. *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 136. Our Supreme Court remanded the case to us for consideration of the defendant's remaining claim. Id., 137.

The defendant claims that the automatic stay provisions of 11 U.S.C. § 362 (a) (5) were triggered when he filed a bankruptcy petition on May 8, 2008, and that the stay was in effect through December 9, 2008, when the bankruptcy case was dismissed. He argues that all actions taken by the trial court and all pleadings filed by the parties during that time frame were void. Such actions and pleadings include the following: (1) the plaintiff's motion to award committee fees and expenses filed on May 13, 2008; (2) the trial court's granting on May 27, 2008, of the plaintiff's motion to award committee fees and expenses; (3) the plaintiff's motion to open judgment filed on November 7, 2008; (4) the defendant's objection to the plaintiff's motion to open judgment filed on November 21, 2008, and the defendant's motion to compel filed on November 21, 2008; (5) the plaintiff's military affidavit filed on November 24, 2008; and (6) the court's judgment of strict foreclosure on November 24, 2008. The defendant posits that, although the Bankruptcy Court granted a termination of the stay on October 8, 2008, the termination of stay did not apply to the plaintiff because the termination was granted only with respect to JP Morgan Acquisition Corp. (JP Morgan) "and/or its successors and assigns," and the plaintiff was not a successor or assign with respect to JP Morgan. We agree with the defendant's claim only as to the proceedings regarding the motion for committee fees and expenses.[3]

The automatic stay provision in bankruptcy proceedings, 11 U.S.C. § 362 (a), provides in relevant part that the filing of a bankruptcy petition with the Bankruptcy Court "operates as a stay, applicable to all entities, of—

(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy case], or to recover a claim against the debtor that arose before the commencement of [the bankruptcy case] . . . (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy case]." 11 U.S.C. § 362 (a) (1) and (5). "The automatic stay provision in . . . 11 U.S.C. § 362 . . . stays any and all postpetition filing. Any filing constitutes a judicial act directed toward the disposition of the case in violation of the automatic stay. . . . The stay of [§] 362 is extremely broad in scope and . . . should apply to almost any type of formal or informal action against the debtor or the [debtor's] property . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Krondes* v. *O'Boy*, 69 Conn. App. 802, 808, 796 A.2d 625 (2002). The Bankruptcy Court has the power to grant relief from the automatic stay. See 11 U.S.C. § 362 (d) through (g).

We nonetheless must consider actions that occurred between May 8, 2008, and October 8, 2008, while the stay was in effect as to this foreclosure action. The committee's motion to award committee fees and expenses was filed on May 13, 2008, and the trial court's granting of the motion occurred on May 27, 2008.[4] The committee of sale, in its May 13, 2008 motion, requested that the court approve the expenses and fees requested pursuant to General Statutes § 49-25. Section 49-25 provides in relevant part: "[I]f for any reason the [foreclosure by] sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and *be taxed with the costs of the case*." (Emphasis added.) "Committee fees are a component of the expense of the sale. . . . It is clear from the language of § 49-25 that it is the plaintiff, and not the defendant, that is liable for the expense of an aborted sale, which may then be taxed as part of the plaintiff's costs." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Norwalk* v. *Farrell*, 80 Conn. App. 399, 408, 835 A.2d 117 (2003).

The first inquiry is whether the committee's motion for fees and expenses directly affected the defendant debtor. It did not. The automatic stay provision provides that the filing of a bankruptcy petition operates as a stay "of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding *against the debtor*."[5] (Emphasis added.) 11 U.S.C. § 362 (a) (1).

"Generally, the filing of a bankruptcy petition does not stay actions against nondebtors. . . . Nondebtors seeking protection of an automatic stay must move for the extension of the stay in the Bankruptcy Court."

(Citation omitted.) *Krondes* v. *O'Boy*, supra, 69 Conn. App. 809; see also *In re Metal Center*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983) ("[t]he plain language of [§] 362 . . . clearly and repeatedly refers to actions against the debtor; it nowhere purports to encompass other related interparty claims"); *Murnane Associates, Inc.* v. *Harrison Garage Parking Corp.*, 217 App. Div. 2d 1003, 630 N.Y.S.2d 187 (1995) (automatic stay did not apply to suit against nondebtors, where debtor under no obligation to indemnify nondebtor); 3 Collier on Bankruptcy § 362.03 [3] [d], p. 362-17 (15th Ed. Rev. 2010) ("[t]he stay of litigation [as a result of the filing of a bankruptcy action] does not protect nondebtor parties . . ."). Therefore, strictly and narrowly speaking, because the defendant was not a party to the committee's motion, neither the filing of the motion nor the court's ruling on the motion constituted in itself a "continuation . . . of a judicial action or proceeding *against the debtor*."

The inquiry does not end, however, with the determination that the motion for fees and expenses did not *directly* affect the defendant debtor. Courts have extended the application of automatic stay to nondebtors in "unusual circumstances" where doing so would further the purpose behind the stay. *In re Jefferson County*, 491 B.R. 277 (Bankr. N.D. Ala. 2013). Courts have extended the stay to nondebtors when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co.* v. *Piccinin*, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479 U.S. 876, 107 S. Ct. 251, 93 L. Ed. 2d 177 (1986); see also *Queenie, Ltd.* v. *Nygard International*, 321 F.3d 282, 287–88 (2d Cir. 2003) ("[t]he automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate [such as] . . . actions where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant" [citations omitted; internal quotation marks omitted]).

"[C]ourts have recognized that [such] an identity of interest exists between a debtor and a third party non-debtor when a right to indemnification exists." *In re North Star Contracting Corp.*, 125 B.R. 368, 370 (Bankr. S.D.N.Y. 1991); see also *A.H. Robins Co.* v. *Piccinin*, supra, 788 F.2d 999. Courts have interpreted the extension of the stay regarding indemnification to include situations "[w]here . . . a debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law . . . [and] the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the [Bankruptcy] Code."

*In re Metal Center*, supra, 31 B.R. 462; see also A.*H. Robins Co., Inc.* v. *Piccinin*, supra, 999 (in order for Bankruptcy Court to properly stay proceedings against nonbankrupt co-defendant unusual circumstances such that "the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor").

In the present case, the defendant in effect was obligated by statute to indemnify the plaintiff. As previously noted, § 49-25 provides: "[I]f for any reason the [foreclosure by] sale does not take place, the expense of the sale and appraisal or appraisals shall be paid by the plaintiff and *be taxed with the costs of the case. . . .*" (Emphasis added.) "Even in cases where a sale does not occur and there are, therefore, no sale proceeds from which the committee may be paid, a committee of sale has expended money, time and effort in performing its duties. . . . Absent fraud or fault on the part of a committee of sale, the committee should be compensated for its efforts and reimbursed for its expenses associated with those acts in furtherance of its obligations, whether or not such acts eventually culminate in a completed sale. . . . If not for § 49-25, there would be no source from which the committee could recoup such fees and expenses. The statute appropriately requires that the plaintiff serve as the source from which the committee may recoup its fees and expenses because it is the plaintiff who has called on the court to provide a remedy for collecting on liens by way of foreclosure. The plaintiff may, in turn, seek to recoup the expenses it has incurred as a result of the services provided by the committee by taxing those expenses as costs in a bill of costs, which it may file pursuant to Practice Book § 18-5." (Citation omitted; internal quotation marks omitted.) *Norwalk* v. *Farrell*, supra, 80 Conn. App. 408–409. Practice Book § 18-5 provides in relevant part: "(a) Costs may be taxed by the clerk in civil cases fourteen days after the filing of a written bill of costs provided that no objection is filed. . . ." Because the stay in the present case was applicable to the motion for committee fees, the action regarding that motion is void.[6]

The judgment is reversed only with respect to the granting of the plaintiff's motion for committee fees. The judgment is affirmed in all other respects and the case is remanded for the purpose of setting new law days and for further proceedings according to law.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date that this case was submitted.

[1] The defendant also argues that the trial court erred in not permitting him to "explore its claims and defenses against the plaintiff and its co-conspirator." From the defendant's sparsely briefed claim, it appears that he claims that the court, after entering a judgment of strict foreclosure on November 24, 2008, erred in denying his motion for a continuance and/or motion to extend the law date. The defendant, who was self-represented at

the time, asked for a continuance. The court explained that it had already entered a judgment of strict foreclosure and was about to set a law date. The defendant responded: "I'd ask for an extended law date. I believe there's violations of RESPA and truth and lending. . . . I'd like time to look into that more."

A trial court has broad discretion in ruling on motions for continuance and in setting law days. See *Cote* v. *Machabee*, 87 Conn. App. 627, 633, 866 A.2d 639 (2005) (abuse of discretion standard applied to trial court's rulings on motion for continuance); *Busca* v. *Nicotra Corporation*, 213 Conn. 264, 267, 567 A.2d 377 (1989) ("[T]he discretion exercised by the court in fixing the law day in a foreclosure is a legal discretion. Its exercise will not be interfered with on appeal to this court except in a case of manifest abuse and when injustice appears to have been done." [Internal quotation marks omitted.]) On the basis of the record before us we do not conclude that the court abused its discretion in denying a continuance or in denying a request for an extended law date to permit the defendant to explore possible defenses, when the court had already entered a judgment of foreclosure and where there is no indication in the file that the defendant ever filed an answer and special defenses. See Practice Book § 10-50.

[2] "As one court has explained, MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members. The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located. . . .

"The benefit of naming MERS as the nominal mortgagee of record is that when the member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record. According to MERS, this system saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans. . . .

"If, on the other hand, a MERS member transfers an interest in a mortgage loan to a non-MERS member, MERS no longer acts as the mortgagee of record and an assignment of the security instrument to the non-MERS member is drafted, executed, and typically recorded in the local land recording office." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, supra, 310 Conn. 122 n.1.

[3] On October 9, 2008, the Bankruptcy Court, on the presumption that JP Morgan was the party prosecuting this foreclosure action, granted JP Morgan's motion to lift the stay with respect to the foreclosure action. The Bankruptcy Court terminated the stay "to permit JP Morgan . . . and/or its successors and assigns to commence and/or continue to prosecute to resolution a foreclosure action against the Debtor's interest in real property known as 27 Mountain Street, Vernon Rockville." The relationship between the plaintiff and JP Morgan is not entirely clear from the materials in the file. Apparently the original security interest was granted by the defendant to MERS, which then assigned the mortgage to the plaintiff. The defendant averred in a court pleading that the plaintiff "sold my mortgage to SPS," which in turn is represented by the defendant to be the servicer for JP Morgan. If this is so, the plaintiff is a predecessor in interest to the mortgage rather than a successor.

Although the Bankruptcy Court's lifting of the stay did not, by a literal application of its terms, appear to apply to JP Morgan's predecessors, the obvious and unavoidable intent was to terminate the stay as to entities in the chain of title and to allow this foreclosure action to proceed; there similarly is no dispute that the release applied to the property which was the subject of this action.

The defendant's objection to the motion for judgment of strict foreclosure, filed on November 21, 2008, did not claim that the plaintiff had not obtained relief from the stay. The trial court, during argument on the plaintiff's motion to open the judgment of foreclosure on November 24, 2008, noted the termination of the stay and, without objection, acted as if the termination of stay applied to the case before it. In the circumstances, we find it unavoidably clear that the Bankruptcy Court's action effectively terminated the stay so that the foreclosure action in question could lawfully proceed.

[4] This court ordered supplemental briefing on the following issues: "Did the committee's motion for fees/expenses filed on May 13, 2008, and/or the court's granting of the motion on May 27, 2008, violate the automatic bankruptcy stay, and, if so, were such actions void? [and] Even if the actions

were void, did the parties have the ability to address the issue of committee fees and expenses subsequent to the stay such that any error was harmless?"

[5] "The notes of the Committee of the Judiciary recognize the debtor only as the beneficiary of the stay [under § 362]. 'The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from its creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.' See: S. Rep. No. 95-989, 95th Cong., 2d Sess. 54–55 (1978), reprinted in U.S. Code Cong. & Admin. News, 1978, pp. 5787, 5840–5841.

" 'The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who first acted would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.' See: H.R. Rep. No. 95-595, 95th Cong. 2d Sess. 349 (1978), reprinted in U.S. Code Cong. & Admin. News, 1978, p. 6297." *Williford* v. *Armstrong World Industries*, *Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

[6] There is a remaining question as to whether any action regarding the committee's motion during the pendency of the stay was harmless. The parties were requested to address the issue in supplemental briefing. We are unable to discern from the present record whether the defendant has in fact incurred any loss or liability from action on the motion. The parties may revisit the question of payment for committee fees on remand.

In any event, the defendant has suggested in his supplemental brief that he is entitled to certain damages for fees, expenses, additional costs and "distract[ion] . . . from focusing on the restructuring of his affairs." On the record before us, it is difficult to discern any such cost or inconvenience.

———————————————